# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MELANIE S. RAGER, | : | |
| Plaintiff, | : | |
| | | Case No. 3:11cv00310 |
| vs. | : | |
| | | District Judge Thomas M. Rose |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. INTRODUCTION

Plaintiff Melanie Rager sought financial assistance from the Social Security Administration by applying for Supplemental Security Income ("SSI") on May 15, 2002. (*PageID#* 153).[2] After her application was denied during the initial administrative proceedings, she was provided a hearing before an Administrative Law Judge ("ALJ"). In April 2005, ALJ Daniel R. Shell issued a written decision concluding that Plaintiff was not under a "disability" within the meaning of the Social Security Act, and therefore was not eligible for SSI. (*PageID##* 150-66). Plaintiff did not pursue an administrative appeal of the initial ALJ's non-disability decision.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

[2] Documents pertaining to the 1999 SSI application were not included in the transcript, except for the Decision of this Court from March 2003 affirming the ALJ's decision denying benefits. *See PageID##* 138-49, 255.

Plaintiff's current application for SSI was protectively filed on November 13, 2006. (*PageID##* 239-41). She claims disability from depression, anxiety, post-traumatic stress disorder, panic attacks, lumbar degenerative disc disease, and borderline intellectual functioning. (*PageID#* 259). After various administrative proceedings, ALJ Amelia G. Lombardo denied Plaintiff's SSI application based on her conclusion that Plaintiff's impairments did not constitute a "disability" within the meaning of the Social Security Act. (*PageID##* 45-60). The ALJ's non-disability determination and the resulting denial of benefits later became the final decision of the Social Security Administration. Such final decisions are subject to judicial review, *see* 42 U.S.C. §405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. #13), the administrative record (Doc. #6), and the record as a whole.

Plaintiff seeks an Order reversing the ALJ's decision and granting her benefits. The Commissioner seeks an Order affirming the ALJ's decision.

## II.  BACKGROUND

Plaintiff was 46 years old on the date the application was filed, and thus was considered to be a "younger person" for purposes of resolving her SSI claim. *See* 20 C.F.R. § 416.963(c); *see also PageID##* 58, 254 [3]. She has a ninth grade, "limited"

---

[3] Plaintiff turned 50 years old one month prior to the issuance of the ALJ's decision.

2

education, *see* 20 C.F.R. § 416.964(b)(3); *see also PageID#* 263, and no past relevant work. (*PageID##* 58, 260).

Plaintiff testified during the ALJ's hearing[4] on February 25, 2010, that she cannot work "[b]ecause when I get around other people, you know, it makes me feel like they are doing something or wanting to do something. I'm waiting on them to do something, and then I get upset. I get angry. It just comes out all wrong." (*PageID#* 88).

Plaintiff lives with her partner and is able to perform all necessary household chores (such as cooking, cleaning, laundry, caring for her dog) and can go shopping when accompanied by her partner. (*PageID#* 89). Plaintiff is able to play the computer game "World of Warcraft" for at least 4 hours (2 hours in the morning and 2 hours in the afternoon or evening) about every day. (*PageID#* 85). She enjoys being with her family and grandchildren for short periods of time, but was "always fussing with them." (*PageID#* 90). She has a driver's license and is able to drive. (*PageID#* 81).

When cross-examined by her counsel, Plaintiff testified that she did not like leaving her house for any reason. (*PageID##* 92-93). She enjoyed fishing, but reported that she only went fishing a couple of times in the past year. (*PageID#* 93). Plaintiff also described panic attacks where she becomes anxious around others and feels that when she is around many people, the air is sucked out of the room. (*PageID##* 98-99).

Plaintiff's partner, Mary, testified that in the eleven years they have been together

---

[4]Because resolution of the issues presented in this case do not turn on the vocational expert testimony, the Court will not summarize the vocational expert testimony presented at the administrative hearing on July 8, 2010.

she has noticed a lot of change in Plaintiff's behavior. (*PageID#* 109). Mary explained that Plaintiff has "gotten a lot more into herself... she doesn't talk to people." (*Id.*). Mary testified that Plaintiff sleeps probably 12-13 hours a day, (*id.*), but shares the household duties with her, including shopping. (*PageID#* 110). Mary also noted that Plaintiff experiences difficulty tolerating others in the house and leaving the house. (*PageID##* 110-12). However, she also stated that Plaintiff has left the house more frequently over time and that, for example, she believes she went to the store by herself on several occasions and attended counseling sessions by herself. (*PageID#* 113). Mary felt that much of Plaintiff's stress level is due to family stressors involving her children and dependency issues. (*PageID##* 120-21). Mary confirmed Plaintiff's testimony that she spends several hours per day playing computer games. (*PageID##* 115-18).

Both ALJs summarized the medical records supported with many specific citations to evidence of record. *See PageID##* 47–51, 155-59, 161. In light of this, and upon consideration of the complete administrative record, the Court does not deem it necessary to recite them here. Where applicable, of course, the Court will identify the medical evidence relevant to its decision.

### III. ADMINISTRATIVE REVIEW

#### A. "Disability" Defined and the ALJ's Sequential Evaluation

The Social Security Administration provides SSI to indigent individuals, subject to several eligibility requirements. Chief among those, for purposes of this case, is the "disability" requirement. To receive SSI, an applicant must be a "disabled individual." 42

U.S.C. § 1381a; *see Bowen v. City of New York*, 476 U.S. 467, 470 (1986). The phrase "disabled individual" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity. 42 U.S.C. § 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70. An SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).

The Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *See PageID##* 45-47; *see also* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any Step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279

F.3d 348, 354 (6th Cir. 2001).

### B. ALJ Shell's Decision

During the administrative proceedings concerning Plaintiff's prior SSI application, ALJ Shell found that Plaintiff suffered from the severe impairments of an anxiety disorder (NOS) and borderline intellectual functioning. (*PageID#* 164). ALJ Shell found that there is no evidence of significant physical impairment that would be vocationally relevant. (*PageID#* 159). ALJ Shell assessed Plaintiff's Residual Functional Capacity ("RFC") as follows:

> The claimant is capable of performing the basic exertional requirements of medium work as such work is defined for Social Security purposes. She can lift as much as 50 pounds occasionally and 25 pounds frequently. The claimant can stand and walk as much as six hours during any given eight-hour workday. She is able to bend or stoop frequently. The claimant is able to use her upper extremities for grasping, holding, and turning objects. She is limited to performing essentially unskilled, entry-level, simple repetitive tasks of a low-stress nature. For purposes of this decision, "low-stress" duties are defined as tasks that involve no direct dealing with the general public, no production quotas, and no close "over-the-shoulder" supervision (20 CFR 416.945).

(*PageID#* 165). Based on these findings, as well as his findings at each step of the sequential evaluation, ALJ Shell concluded that Plaintiff was not under a disability. (*PageID##* 153-66).

### C. ALJ Lombardo's Decision

In ALJ Lombardo's Decision, she acknowledged that ALJ Shell had previously found Plaintiff capable of performing medium exertional work. She noted, however, this is internally inconsistent with the finding that Plaintiff did not suffer from a severe

physical impairment. (*PageID#* 55).

At Step 2 of the sequential evaluation, ALJ Lombardo concluded that Plaintiff has the severe impairments of borderline intellectual functioning, anxiety, and social avoidance disorders. (*PageID#* 47). She found the record documents complaints of multiple physical impairments, however, as noted in ALJ Shell's Decision, those alleged impairments are not shown to rise to the level of severe. (*Id.*).

The ALJ found at Step 3 that Plaintiff did not have an impairment or combination of impairments that met or equaled the criteria of a listing-level impairment. (*PageID#* 48). In doing so, the ALJ explicitly considered the provisions of Section 12.00 dealing with mental disorders: 12.05, 12.06, and 12.08.

At Step 4 the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels but, with the following nonexertional limitations: limited to simple, repetitive tasks that are considered low stress, defined as jobs not involving assembly line production quotas or fast pace, no jobs involving contact with the public, or more than minimal contact with supervisors and coworkers. (*PageID#* 53). The ALJ next found that considering Plaintiff's age, education, work experience, and RFC, she can perform jobs that exist in significant numbers in the national economy. (*Id.*). These findings, together with the ALJ's remaining findings throughout her sequential evaluation, led her to conclude that Plaintiff was not under a disability and therefore not eligible for SSI. (*PageID##* 45-60). In addition, ALJ Lombardo also considered *Drummond v. Comm'r of Soc. Sec.,* 126 F.3d 837 (6th Cir. 1997), and Acquiescence Ruling 98-4 in reaching her

decision. (*PageID##* 47, 54-55).

## IV. JUDICIAL REVIEW

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r. of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r. of Soc. Sec*., 478 F3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r. of Soc. Sec*., 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r. of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to

follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r. of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V. DISCUSSION

### A. The Parties' Contentions

Plaintiff directs her arguments mainly to the ALJ's evaluation of certain medical source opinions. Plaintiff contends that the Commissioner erred by applying the *Drummond* precedent and provisions of Acquiescence Ruling 98-4(6). Plaintiff claims that there is not "substantial evidence supporting [the ALJ's] conclusion that there had been no significant change in the nature, character, or severity of [Plaintiff's] conditions." (Doc. # 8, *PageID#* 692). According to Plaintiff, in making such a finding, the ALJ rejected the opinion of Plaintiff's treating psychiatrist, Dr. Smith, who found that Plaintiff is markedly impaired in her ability to perform the mental demands of work activity. (*Id.*). Plaintiff further contends that the ALJ erred by never mentioning Plaintiff's psychotic disorder, nor did she rule it out as a "non-severe" condition. (*See* Doc. # 13, *PageID#* 713).

The Commissioner asserts that the ALJ did not misapply *Drummond* and that the ALJ reasonably found that, when compared to the previous ALJ's decision in April 2005, no new and material evidence documented a significant change in Plaintiff's condition. (Doc. #11, *PageID##* 704-06). According to the Commissioner, the mental RFC – work

9

limited to simple, repetitive tasks that are considered low stress, defined as jobs not involving assembly line production quotas or fast pace, no jobs involving contact with the public, or more than minimal contact with supervisors and coworkers – established in ALJ Shell's Decision is still applicable. (*Id.*).

>   B.   **The *Drummond* Decision**

In *Drummond*, the United States Court of Appeals for the Sixth Circuit held "the principles of res judicata can be applied against the Commissioner. When the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." *Id*. at 842 (citations omitted). "Absent evidence of improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." (*Id.*). Under *Drummond*, "[t]he burden is on the Commissioner to prove changed circumstances and therefore escape the principles of res judicata." *Id*. at 843. To avoid being bound to an earlier decision, the Commissioner must present substantial evidence showing that the claimant's condition has significantly improved. (*Id.*).

After *Drummond*, the Commissioner issued an Acquiescence Ruling mandating ALJs in Ohio (and other states within the Sixth Circuit) to follow *Drummond* by applying res judicata to prior assessment of a claimant's RFC and other prior findings made as part of a sequential evaluation. The Commissioner explained:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an

ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law....

AR 98-4(6), 1998 WL 283902 (June 1, 1998).

In the present case, ALJ Lombardo applied *Drummond* as follows:

Pursuant to Drummond v. Commissioner, 126 F. 3d 837 (6th Cir. 1997), absent new and material evidence documenting a significant change in the claimant's condition, the residual functional capacity established in a prior hearing decision by an Administrative Law Judge is binding on the present adjudicator, provided that the new claim arises under the same title of the Act.

In this case, the record confirms that there has been no significant change in the nature, character, or severity of the claimant's mental impairments since the issuance of the prior ALJ Decision. The claimant reports essentially the same complaints at this time as she did when she filed the application that was the subject [o]f the prior ALJ Decision. At that time, she alleged disability secondary to anxiety and difficulty maintaining attention and concentration. Treatment records then indicated that the claimant complained of social anxiety, difficulty relating to others, and difficulty leaving her home due to severe anxiety. These records also confirmed that she performed household chores, maintained a stable relationship with her significant other, and that there was no evidence of a formal thought disorder, delusions, or impairment of judgment or insight. Those allegations have not changed as the claimant again reports significant difficulty in social situations, difficulty relating to others, and difficulty leaving her home. Current treatment records reflect these complaints as well as the recurring theme of family stressors involving her children. Additionally, the manner and frequency of treatment is essentially the same as it was from 2002 to 2005. The claimant received medication management services from Dr. Smith and supportive counseling from a therapist. Further indicators of the lack of any significant change are the reports and assessments of Dr. Smith. The information contained in her reports and the level of functional severity he reported remains the same currently as it was in 2004. As a result, the record confirms that there has been no significant change in the nature, character, or severity of the claimant's conditions and, therefore, the mandates of Drummond, *supra*,

11

and AR 98-4 require the adoption of the same residual functional capacity as set forth in the prior ALJ Decision.

In contrast, Drummond, *supra*, and AR 98-4 do not apply to the physical residual functional capacity set forth in the prior ALJ Decision.

(*PageID*## 54-55) (citation to record omitted).

### C. Medical Source Opinions

The Social Security regulations and case law require ALJs to apply controlling weight to a treating medical source's opinion when it is both well supported by medically acceptable data and not inconsistent with other substantial evidence of record. *See* 20 C.F.R. § 416.927(d)(2); *see also Rabbers*, 582 F.3d at 660; *Rogers*, 486 F.3d at 242; *Wilson*, 378 F.3d at 544. If a treating medical source's opinion is not entitled to controlling weight, the ALJ must weigh the opinion under "a host of other factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242.

The Regulations also promise: "We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion." *Wilson*, 378 F.3d at 544 (quoting in part 20 C.F.R. § 416.927(d)(2)).

"In appropriate circumstances opinions from State agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources.' One such circumstance may occur, for example, when the 'State medical . . . consultant's opinion is based on review of a complete case record that . . . provides more detailed and

12

comprehensive information that what was available to the individual's treating source.'" *Blakley*, 581 F.3d at 409 (quoting in part Soc. Sec. Ruling 96-6p, 1996 WL 374180 at *3). Yet ALJs must not automatically accept (or reject) the opinions of a non-treating medical source; they instead must evaluate non-treating medical source opinions under the factors of supportability, consistency, and specialization (at a minimum). *See* 20 C.F.R. § 416.927(f); *see also* Ruling 96-6p at *2-*3.

    **D.**    <u>**Analysis**</u>

A review of the ALJ's decision reveals a well-supported description of the medical source opinions and records. (*PageID##* 49-51, 56-58). Contrary to Plaintiff's contentions, the ALJ provided sufficient information to show that she weighed these medical source opinions as the Regulations required. The ALJ correctly set out the legal criteria applicable under the treating physician rule, and correctly recognized that if controlling weight is not due a treating physician's opinion under that criteria, the Regulations require an ALJ to continue weighing the treating physician's opinions under a number of factors. *See PageID#* 57. The ALJ then correctly listed those factors consistent with the Regulations and case law. *Id.*; *see also* 20 C.F.R. §416.927(d)(2)-(6); *Wilson*, 378 F.3d at 544.

In support of her position, with respect to her alleged mental impairment, Plaintiff relies on Dr. Smith's report from November 17, 2009. Plaintiff argues this report establishes a worsening of her mental impairment.

As the ALJ noted, Dr. Smith submitted multiple opinions regarding Plaintiff's

13

ability to engage in employment. He submitted a response to a narrative questionnaire, a supplemental psychiatric/psychological questionnaire and medical assessment of ability to perform work related activities (mental) on November 17, 2009. (*See PageID##* 585-93). Dr. Smith provided Plaintiff's diagnoses as panic disorder with agoraphobia, psychotic disorder, and post-traumatic stress disorder. (*PageID#* 585). Dr. Smith assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 47. (*Id.*). Dr. Smith essentially opined that Plaintiff is disabled as a result of her mental impairment. (*PageID##* 585-93).

Next, the ALJ declined to credit Dr. Smith's opinions based on factors permitted by the Regulations. The ALJ found that Dr. Smith's opinion is not supported by the substantial weight of the record and is contradicted by other credible evidence, including the rejection of essentially the same assessment by a prior ALJ, his opinion is not entitled controlling, deferential, or even significant weight as to Plaintiff's functional capacity. (*PageID#* 58).

The ALJ also determined:

> Dr. Smith has reported that the claimant is markedly impaired in her ability to perform the mental demands of work activity. However, he is not her therapist and provides only medication management services. He has also reported that the claimant is mentally retarded, which is not supported by the record or the opinion of other treating or examining sources. Further, Dr. Smith's current assessment has not significantly changed from a similar assessment that was rejected by a prior ALJ. Absent a change in the nature or severity of the claimant's emotional condition, his opinion must again be rejected. In addition, his opinion lacks support in the record. The claimant does go out occasionally, leaves her house more often than alleged, has remained in a sustained relationship with her significant other for many

years, cares for a pet dog, is able to go out by herself to the store and to therapy sessions, and provides her own self care. Further, the degree of severity reported by Dr. Smith is not consistent with the level or frequency of treatment the claimant receives. The claimant receives only supportive counseling on a monthly to bimonthly basis and reported that she sees Dr. Smith every two months for medication management. If the claimant truly functioned at the markedly reduced level asserted by Dr. Smith it is reasonable to expect that more intensive therapy, including possible inpatient psychiatric admission, would be considered, but no such course of action is mentioned anywhere in the record.

(*Id.*).

First, the Court notes that although Dr. Smith essentially opined that Plaintiff is disabled, he reported few objective clinical findings. For example, the record contains two treatment notes from Dr. Smith – from April 24, 2007, and May 30, 2007.[5] Dr. Smith reported that Plaintiff's mood was anxious; her affect constricted with some memory impairment; she presented with an appropriate appearance; no abnormal psychomotor activity; normal speech; focused attention; was oriented; her thought processes were coherent; and insight and judgment were noted to be good. (*PageID##* 476-78). In addition, Dr. Smith reported that Plaintiff did not appear tearful; was alert and oriented; and that she had adequate judgment and fair insight. (*Id.*). Indeed, a review of Dr. Smith's report shows that much of it is a recitation of Plaintiff's self-reported, subjective complaints. (*Id.*).

Plaintiff argues that the opinion of the psychological consultive examiner, Dr.

---

[5]Additional office notes from Mental Health Services of Clark County show that Plaintiff has followed up with Dr. Smith on other occasions based on notations in the therapist's notes. (*See PageID##* 597, 601, 602)

Metts, was not inconsistent with the opinion of Dr. Smith. This contention lacks merit. Dr. Metts indicated in her report of March 19, 2007, that Plaintiff appeared to be functioning in the low average range, and should be able to perform at the simple to low moderate task range. (*PageID#* 358). Dr. Metts also found that Plaintiff's ability to maintain appropriate attention and concentration was "retained for the simple to low moderate task range." (*Id.*). When determining Plaintiff's ability to relate to fellow workers/supervisors or deal with the public, Dr. Metts found that Plaintiff related to her in an anxious fashion, and reported an increase in mental health symptoms when around other people and leaving the house. Plaintiff also reported having difficulties in the past when in school, and no experience working with coworkers or supervisors. (*Id.*). Dr. Metts found that Plaintiff may be able to work in a very low stress position, but not a moderate or high stress position due to a long history of symptoms of anxiety, isolating and avoiding behaviors, but she was in treatment and on psychotropic medication. (*Id.*). Dr. Metts diagnosed a panic disorder with agoraphobia, and a personality disorder NOS with avoidance features. She assigned Plaintiff a GAF score of 60.

Catherine Flynn, Psy.D., a state agency psychologist who reviewed the file in April 2007, found that the record documented anxiety and personality disorders that imposed a mild restriction in daily activities; moderate difficulties in maintaining social functioning and maintaining concentration, persistence, or pace; and that Plaintiff experienced no episodes of extended decompensation. (*PageID##* 365, 373). Dr. Flynn concluded:

16

> The [claimant] is "limited to performing essentially unskilled, entry-level, simple repetitive tasks of a low-stress nature. For purposes of this decision, "low-stress" duties are defined as tasks that involve no direct dealing with the general public, no production quotas, and no close "over-the-shoulder" supervision." (*PageID#* 363).

Dr. Flynn reported that this was an adoption of the RFC set forth in the prior ALJ's Decision, pursuant to Acquiescence Ruling 98-4 (Drummond Ruling). (*Id.*).

The ALJ discussed Dr. Metts' opinion in detail, and, in fact, gave it significant weight. (*PageID#* 56). Indeed, the ALJ found Dr. Metts' opinion, along with that of Dr. Flynn, supported by the substantial weight of the evidentiary record. (*Id.*).

In addition to the medical source opinions, the ALJ cited Plaintiff's level of activity in finding her descriptions of her mental impairments to be less than fully credible. *See PageID##* 49, 51-52, 56; *see also* 20 C.F.R. § 416.929(c)(3)(I) (daily activities considered in evaluating symptoms). Indeed, the ALJ noted that Plaintiff was able to take care of her personal needs; performed a variety of household chores, including cooking and doing laundry; could go out to eat with her partner, occasionally; took care of her dog; went shopping with her partner; and attended therapy sessions alone. (*PageID#* 89). The record also showed that Plaintiff continues to play the computer role-playing game "World of Warcraft" for approximately 4 hours daily. (*PageID#* 85). Further, she apparently was involved in designing computer graphics, as she showed her therapist a disc of such designs during one session. (*PageID#* 56). She enjoys being with her family for short periods of time. (*PageID#* 90). She has a driver's license and is able to drive. (*PageID#* 81).

The ALJ also noted that Plaintiff's treatment involved only conservative measures, and that Plaintiff did not experience side effects from her medications that would prevent her from working, which were proper considerations under the Regulations. *See PageID#* 56; *see also* 20 C.F.R. §§416.929(c)(3)(iv)-(v). Based on the record as a whole, the ALJ reasonably concluded that Plaintiff could perform work that is limited to simple, repetitive tasks that are considered low stress, defined as jobs not involving assembly line production quotas or fast pace, no jobs involving contact with the public, or more than minimal contact with supervisors and coworkers.

Finally, in her Reply to the Commissioner's Memorandum in Opposition, Plaintiff argues that the ALJ erred by never mentioning Plaintiff's psychotic disorder, nor ruling it out as a "non-severe" condition. (Doc. # 13, *PageID#* 713). Defendant, however, argues that because a memorandum in support of Plaintiff's Statement of Specific Errors was never filed in this case, this argument is waived.[6] (*PageID#* 706) (citing *Rice v. Comm'r of Soc. Sec.*, 169 Fed. Appx. 452, 454 (6th Cir. 2006)). The Court need not decide this issue, however, because even if Plaintiff's argument regarding the psychotic disorder is not deemed waived, it is without merit. Plaintiff argues the ALJ did not consider Plaintiff's psychotic disorder, as diagnosed by Dr. Smith, and that the disorder did not exist previously, therefore making it improper for the ALJ to apply *Drummond* in this case. ALJ Lombardo, however, considered Dr. Smith's opinion – inclusive of the

---

[6] It was indicated in Plaintiff's Statement of Specific Errors that a memorandum in support would be provided the following day, however, no such document was subsequently filed in this case. (Doc. #8 at 2, *PageID#* 693).

18

psychotic disorder diagnosis – but decided not to provide it controlling, deferential, or even slight significant weight as to the claimant's functional capacity because it "is not supported by the substantial weight of the record and is contradicted by other credible evidence, including the rejection of essentially the same assessment by a prior ALJ . . . ." (*PageID#* 58). Because this assessment is supported by substantial evidence, the ALJ therefore did not err in rejecting Dr. Smith's opinion or applying *Drummond*.

Although Plaintiff's Statement of Errors suggests that the evidence should have been weighed differently, her assertions do not undermine the substantial evidence supporting the ALJ's assessment of the medical source opinions and other findings. Accordingly, the ALJ's decision must be affirmed. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *see also Mullen v. Bowen*, 800 F.3d 535, 545 (6th Cir. 1986).

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's final non-disability determination be affirmed; and,
2. The case be terminated on the docket of this Court.

July 25, 2012                                                                        s/ Sharon L. Ovington  
                                                                                      Sharon L. Ovington  
                                                                    United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).